UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOANN M. REVILLE,                                    **SUPPLEMENTAL**
                                                     **REPORT, RECOMMENDATION**
                              Plaintiff,             **and ORDER**

v.                                                   04-CV-0258(A)(M)

NIAGARA FRONTIER TRANSPORTATION
AUTHORITY,

                              Defendant.
_____

        This case was referred to me by Hon. Richard J. Arcara, in accordance with 28 U.S.C. §636(b)(1), for supervision of all pretrial matters and to hear and report upon dispositive motions [45].[1] Before me is plaintiff's motion for leave to belatedly file papers in opposition to the motion of defendant Niagara Frontier Transportation Authority ("NFTA") for summary judgment [86]. For the following reasons, plaintiff's motion is GRANTED. However, upon consideration of her opposing papers, I reaffirm my December 10, 2008 Report and Recommendation [83] that NFTA's motion for summary judgment [70] be granted.

## PROCEDURAL BACKGROUND

        I recommended that NFTA's initial motion for summary judgment [58] be denied without prejudice, due to NFTA's failure to provide plaintiff with a Notice to *Pro Se* Litigants, as required by Local Rule 56.2 [67]. After Chief Judge Arcara adopted my Report and Recommendation, NFTA re-filed its motion with the proper *pro se* notice [70], and I set a briefing schedule [76]. Despite obtaining several extensions of the deadline for filing her

---

[1]     Bracketed references are to CM/ECF docket entries.

opposition to the motion [78, 79, 80], the most recent of which required her opposition to be filed by August 15, 2008, plaintiff failed to file opposing papers.

Notwithstanding that failure, I considered the materials plaintiff submitted in opposition to NFTA's initial motion for summary judgment as her opposition to NFTA's second motion for summary judgment [65]. In a Report and Recommendation filed December 10, 2008, I recommended that NFTA's motion for summary judgment be granted [83].

By letter dated December 19, 2008, plaintiff requested leave to file her opposition to NFTA's motion [86]. Accompanying the letter is plaintiff's opposition, which includes a statement of material facts [84], Memorandum of Law, and various affidavits and documentary evidence [85]. Included among these documents is a document entitled "Plaintiff's Objections to Magistrate Judge's Recommendations" [85].[2]

## DISCUSSION AND ANALYSIS

**A.     Plaintiff's Motion for Leave to Belatedly File Opposing Papers.**

"Courts have discretion to grant parties permission to file untimely papers upon a showing of good cause . . . . This discretion permits courts to balance the importance of untimely papers against the possible prejudice, if any, to the opposing party." <u>Cooper Industries, Inc. v. Agway, Inc.</u>, 987 F.Supp. 92, 100-101 (N.D.N.Y. 1997). *See* Fed. R. Civ. P. ("Rule") 6(b)(1)(B) ("When an act may or must be done within a specified time, the court may, for good

---

[2]     I assume that plaintiff filed her objections in an attempt to preserve her right, if any, to object to my December 10, 2008 Report and Recommendation [83].

cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." ).

Plaintiff argues that she failed to timely file her opposing papers because of the death of two family members and the serious illness of a third family member [86]. Additionally, she alleges that she has been suffering from severe depression, which resulted in "an inability to focus and loss of concentration". Id.

I am mindful that plaintiff's motion was filed over four months after the deadline for plaintiff's opposition to NFTA's motion for summary judgment [80]. However, balancing the duration of the delay and prejudice to NFTA against the reasons cited by plaintiff for the delay, the significance of NFTA's motion for summary judgment, and her *pro se* status, I order that plaintiff's motion be granted.


**B.      Even Upon Consideration of Plaintiff's Opposing Papers, NFTA's Motion for Summary Judgment Should be Granted.**

Having considered plaintiff's materials [84 and 85] in opposition to NFTA's second motion for summary judgment, it remains my conclusion that she has failed to demonstrate a *prima facie* case that her termination from employment with NFTA violated the ADA.[3]

---

[3]     I recognize that in September 2008, Congress enacted the ADA Amendments Act of 2008, Pub.L. No. 110-325 ("ADA Amendments"), which took effect on January 1, 2009. However, "the ADA Amendments do not apply retroactively", Geoghan v. Long Island Rail Road, 2009 WL 982451, *9 (E.D.N.Y. 2009), and are thus inapplicable to plaintiff's claims in this case.

1.  **Plaintiff Has Failed to Demonstrate that She Suffers from a Disability Within the Meaning of the ADA.**

Plaintiff may "prove a 'disability' within the meaning of the ADA by establishing that she was "'regarded as' having an impairment that substantially limits one or more major life activities. . . . [W]hether an individual is 'regarded as' having a disability 'turns on the employer's perception of the employee' and is therefore 'a question of intent, not whether the employee has a disability.' . . . It is not enough, however, that the employer regarded that individual as somehow disabled; rather, the plaintiff must show that the employer regarded the individual as disabled within the meaning of the ADA. . . . Thus, in order to prevail, the plaintiffs were required to adduce evidence that the [defendant] regarded [the plaintiff] as having an impairment that substantially limited a major life activity." Colwell v. Suffolk County Police Department, 158 F.3d 635, 646 (2d Cir. 1998), cert. denied, 526 U.S. 1018 (1999).[4]

Plaintiff claim that she was "regarded" by NFTA as having an impairment that substantially limits one or more life activities (plaintiff's Memorandum of Law [85], p. 18 ("they knew she was under the care of a physician for bi-polar/depression")) is unpersuasive. "Where, as here, the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs.' . . . Accordingly, [the plaintiff] must establish that the employer believed that she suffered from a condition that prevented her from working in a broad class of jobs, not

---

[4] My initial Report and Recommendation focused on whether plaintiff satisfied the first definition of "disability" in the statute: "a physical or mental impairment that substantially limits one or more of the major life activities of such individual". 42 U.S.C. §12102(2).

just the job that she previously had." Roberts v. The Health Association, 2009 WL 248069, *3 (2d Cir. 2009) (summary order).

It is uncontested that plaintiff's impairment did not prevent her from working the day shift of the Management Representative position. Thus, it is evident that her condition did not limit her from a *broad class* of jobs. *See* Bogner v. The Wackenhut Corp., 2008 WL 84590, *4 (W.D.N.Y. 2008) (Telesca, J.)("Plaintiff can show only that his epilepsy has affected his major life activity of working in a job that requires him to work between 10:30 p.m. and 6:30 a.m. This, at best, demonstrates an inability to work during an 8-hour period at night."); Colwell, supra, 158 F. 3d at 644-45 (plaintiff police officer's medical restrictions that he not work "late hours or rotating shifts" was insufficient to show that he was significantly restricted in his ability to work in a broad range of jobs).

Plaintiff has not submitted any evidence which would cause me to reconsider my earlier determination that her mental impairments did not "substantially limit" her ability to sleep or work. *See* December 10, 2008 Report and Recommendation [83], pp. 12-14. Plaintiff continues to rely on the May 8, 2001 letter of Myong Won Kim, M.D., which stated:

> "I am recommending Joan to work on 8 to 4 shift due to her psychiatric condition, namely bipolar affective disorder. Historically, she had difficulty working at night, exhibiting signs of decompensation due to reversal in her sleep cycle. She tends to be easily stressed out if she works at night, she ended up getting severely depressed and at times she was also exhibiting severe agitation. Therefore, I would recommend her working on a continuous 8 to 4 shift." Plaintiff's Memorandum of Law [85], Ex. J.

However, Dr. Kim's letter fails to establish that plaintiff's sleep or work were substantially limited as a result of her mental impairments. At most, it establishes that she was

-5-

unable to work at night at that time, but there is no indication that her impairments affected her ability to sleep or that these limitations were ongoing.

Beyond Dr. Kim's letter, plaintiff fails to offer any medical evidence substantiating her limitations, which is fatal to her claim. *See* Baerga v. Hospital For Special Surgery, 2003 WL 22251294, *6 (S.D.N.Y. 2003) ("Plaintiff's failure to provide medical documentation of his alleged sleeping difficulties renders his 'substantial limitation' showing insufficient as a matter of law. Courts in the Second Circuit have consistently held that when a plaintiff fails 'to offer any medical evidence substantiating the specific limitations to which he claims he is subject due to his condition,' he cannot establish that he is disabled within the meaning of the ADA.").[5]

Moreover, while plaintiff claims that NFTA knew about her mental impairments, she has failed to over any evidence that NFTA regarded her as having an impairment that "substantially limited" a major life activity. The fact that NFTA temporarily permitted her to work the day shift in May 2001 fails to establish that NFTA regarded her as disabled. *See* Popko v. Pennsylvania State University, 994 F.Supp. 293, 299 (M.D.Pa. 1998), remanded on other grounds, 10 A.D. Cases 1152 (3d Cir.1999) ("The fact that the defendants allowed plaintiff to only work day shifts does not demonstrate that defendant perceived plaintiff as having a disability under the ADA.").

---

[5] Having found that plaintiff's mental impairment does not substantially limit or has at any time in the past substantially limited her ability to sleep or work, I also find that plaintiff has failed to establish a record of impairment. *See* 42 U.S.C. §12102(2)(B).

**2. Plaintiff Has Failed to Establish Any Reasonable Accommodation Not Provided to Her by NFTA That Would Have Allowed Her to Perform the Essential Functions of Her Job.**

"The burden is on [plaintiff] s to show the existence of a reasonable accommodation." Phelps v. Optima Health, Inc., 251 F.3d 21 (1st Cir. 2001). Plaintiff has failed to establish any reasonable accommodation that would have allowed her to perform the essential functions of her job despite her alleged disability. The accommodation which plaintiff claims NFTA should have provided (working only the day shift) is not a reasonable accommodation, insofar as it requires the elimination of an essential function of the Management Representative Position. "A scheduling accommodation is not reasonable if it, in essence, requires an employer to eliminate an essential function of a job." Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 120 (2d Cir. 2004). An "employer is not required to reallocate the essential functions of a job". Basith v. Cook County, 241 F.3d 919, 932 (7th Cir. 2001).

Plaintiff appears to argue that working the afternoon shift on a rotating basis was not an essential element of her job. First, she relies on the affidavit of Sandra Smith, who was employed by NFTA as a Management Representative [85-2]. Ms. Smith states, *inter alia*, that:

> "In my discussions with Ms. Reville I reiterated to her that I was told by the NFTA that I would not [*sic*] required to work 12:00 midnight to 8:00 a.m. shifts when I took the position. . . . I suffer from epilepsy and am subject to nocturnal seizures. . . . The N.F.T.A. has put forth in varied correspondence that rotating shifts was a requirement of the position of management representative. This allegation is in direct contrast to what I was told." Id.

However, by plaintiff's own admission, this accommodation was afforded to Ms. Smith for a number of months *without* objection from plaintiff or the other Management Representative. *See* NFTA's Appendix [74], Ex. C, pp. 34-35. Unlike Ms. Smith, the other two

-7-

Management Representatives *opposed* plaintiff's continued ability to work only the day shift. *See* NFTA's Appendix [74], Ex. B, ¶21. Although plaintiff argues that Ms. Smith "was not asked regarding any medical shift change for Ms. Reville due to her medical condition", Plaintiff's Memorandum of Law [85], p. 27, this is not reflected in Ms. Smith's affidavit.

It remains undisputed that removing plaintiff from the rotating schedule for Management Representatives, absent the consent of the other Management Representatives, would require NFTA to violate the collective bargaining rights of the other Management Representatives, thereby making the requested accommodation unreasonable *per se*. *See* <u>Keck v. New York State Office of Alcoholism and Substance Abuse Services</u>, 10 F. Supp. 2d 194, 202 n. 6 (N.D.N.Y. 2006) ("Defendant suggests that plaintiff's requested accommodation would have been a violation of the collective bargaining rights of the other employees. If that were the case, the accommodation would be *per se* unreasonable.").

Plaintiff also relies on a grievance which indicates that the day shift for the Management Representative position was eliminated shortly after her termination. Plaintiff's Memorandum of Law [85], Ex. B. She argues that this change is in direct contravention to NFTA's position that working rotating shifts was an essential function of the Management Representative position. Plaintiff's Memorandum of Law [85], p. 25. However, this evidence does not undermine my earlier finding that working afternoon shifts on a rotating basis was an essential function of the Management Representative position. In fact, as NFTA contends, this

only bolsters its argument that working the afternoon shift - the only remaining shift - was an essential function of the Management Representative position. NFTA's Response [88], p. 14. [6]

3. **NFTA has articulated a legitimate, non-discriminatory reason for the challenged conduct and plaintiff has failed to present any evidence that the non-discriminatory reasons were pretextual.**

Even if plaintiff had demonstrated a *prima facie* case, NFTA has articulated a legitimate, non-discriminatory reason for the challenged conduct: namely, that plaintiff was terminated under NFTA's progressive discipline policy. Under the burden-shifting framework of McDonnell Douglas Corp v. Green, 411 U.S. 792, 802 (1973), the burden shifts back to the plaintiff to show that the NFTA's proffered reasons for her termination are pretextual.

Plaintiff argues that "the defendant has no progressive discipline policy as stipulated by its FOIA officer Deborah Leous, and their [*sic*] was no known policy and procedures manual nor was one disclosed in discovery, as requested." Plaintiff's Memorandum of Law [85], p. 38. By letter dated June 26, 2001, Deborah Leous, NFTA's Chief Financial Officer/Records Access Officer, responded to plaintiff's Freedom of Information Act ("FOIA") request for the progressive discipline policy by stating that "there is no specific written policy. However, the NFTA abides by principles which are generally accepted in the work place by

---

[6] Because I have concluded that plaintiff has not established a triable issue of fact as to whether she suffers from a disability within the meaning of the ADA or that NFTA failed to provide her with a reasonable accommodation that would have allowed her to perform the essential functions of her job, I need not decide whether the accommodations NFTA afforded plaintiff were reasonable. *See* Basith, supra, 241 F.3d at 932 ("We need not decide whether Basith was denied reasonable accommodation in light of his failure to show a question of fact existed as to whether he was a 'qualified individual with a disability.'"). Since I continue to find that plaintiff's ADA claim fails, I also find no reason to resolve NFTA's Eleventh Amendment immunity argument. *See* NFTA's Response [88], pp. 16-18.

labor and management, and recognized by arbitrators". Plaintiff's Memorandum of Law [85-4], p. 17.

Plaintiff fails to point out that Ms. Leous also stated that "in its collective bargaining agreement with ILA Local 2028, the NFTA has agreed to follow a policy of progressive discipline." Id. This is consistent with Article 30 of the collective bargaining agreement, which states that "the NFTA shall follow a policy of progressive discipline; however, this policy shall not preclude the NFTA for a good cause, from advancing discipline and disciplinary penalties." Reply Affidavit of Susan Wheatley, Esq. [66], Ex. FF. Thus, even absent a separate formal written policy, it is evident from the collective bargaining agreement that NFTA followed a progressive discipline policy.

Plaintiff also attempts to offer explanations for a number of the alleged incidents that led to her termination, and challenges the severity of the discipline imposed by NFTA for these incidents. Plaintiff's Memorandum of Law [85], pp. 39-40 ("defendant has worded and slanted various claims against plaintiff in such a way to infer wrongdoing"). Even if I were to accepting plaintiff's version of NFTA's disciplinary actions (most of which is not in evidentiary form), plaintiff fails to challenge *all* of the warnings and disciplinary actions that led to her termination, including her failures to report to her assigned shift and failures to timely submit her daily shift reports. *See* December 10, 2008 Report and Recommendation [83], pp. 3-6.

Plaintiff also relies on a number of NFTA performance evaluations from 1985 through 1993, which indicate that she was performing her job responsibilities satisfactorily. Plaintiff's Memorandum of Law [85], Ex. C. However, as indicated in my initial Report and

Recommendation ([83], pp. 3-6), plaintiff's disciplinary issues generally began in 1996 and continued through her termination.

It should also be noted the plaintiff continues to assert that William Flanagan's actions were motivated by his desire to eliminate the Management Representative position. However, as asserted in my initial Report and Recommendation [83], p. 18, this allegation is in direct contravention to plaintiff's claim that she was terminated because of her disability. Plaintiff's Memorandum of Law [85], p. 17. Therefore, plaintiff has not established that the proffered reason for her termination under NFTA's progressive discipline policy was pretextual.

**CONCLUSION**

For these reasons, I order that plaintiff's motion [86] for leave to belatedly file papers in opposition to NFTA's motion for summary judgment be GRANTED. Having considered those papers, I once again recommend that NFTA's motion for summary judgment [70] be GRANTED. Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Rule 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate

judge in the first instance.  See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.  Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules of Civil Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report and Recommendation), may result in the District Judge's refusal to consider the objection.

**SO ORDERED.**

DATED:   June 25, 2009

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge